## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROWDYDOW BBQ WORLDWIDE, LLC, an Illinois Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | No. |
| v. | ) ) | |
| FOURTH STREET BARBEQUE AND PACKING, INC., a Pennsylvania Corporation, | ) ) ) ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, ROWDYDOW bbQ WorldWide, LLC, by its undersigned attorneys, for its Complaint against Defendant, Fourth Street Barbeque and Packing Inc., alleges as follows:

## PARTIES

1.     Plaintiff ROWDYDOW bbQ WorldWide, LLC ("ROWDYDOW") is an Illinois limited liability company with a principal place of business located at 2 West Delaware Place, Chicago Illinois 60610.  ROWDYDOW's members are Angela Keaveny, an Illinois citizen; Bonita Dupre-Rios, a Virginia citizen; Cindy Dull, a Virginia citizen; Bill Dull, a Virginia citizen; Captain Meatball, LLC, whose two members are Joseph S. Caltabiano, an Illinois citizen and John D. Cortese, an Illinois citizen; James E. Prinzker, an Illinois citizen; Norse Holding Corp., a corporation organized under the laws of the State of Wisconsin with a principal place of business located in LaCrosse, Wisconsin; Steven Reitman, an Illinois citizen; Christopher George Masek, an Illinois citizen; Todd Widholm, an Illinois citizen; Brian Mueller, an Illinois citizen; Richard M. Ferrari Living Trust u/a dated September 12, 2013, an Illinois citizen; John Martin, an Illinois citizen and Lela Martin, an Illinois citizen.  ROWDYDOW is a citizen of the

States of Illinois, Wisconsin and the Commonwealth of Virginia. ROWDYDOW specializes in the sale and marketing of fully cooked, ready to eat barbeque protein products.

2.     Defendant Fourth Street Barbeque and Packing, Inc. ("Fourth Street") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 3 Arentzen Blvd, Charleroi, Pennsylvania, 15022. Fourth Street is a citizen of the Commonwealth of Pennsylvania. Fourth Street is a co-packer of food products for clients such as ROWDYDOW.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) as this is an action between citizens of different states wherein the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court has personal jurisdiction over Fourth Street because, among other things, the contract that is the subject of this lawsuit is between Fourth Street and an Illinois limited liability company headquartered in Illinois; the contract provides that it shall be governed by the laws of the State of Illinois; and a substantial part of the performance of the contract occurred in Illinois.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

5.     ROWDYDOW was founded in 2007 by its current President, Angela Keaveny ("Ms. Keaveny"). The company specializes in the sale and marketing of barbeque protein products such as smoked pulled pork and smoked whole beef brisket. ROWDYDOW uses its

2

specialty rubs and sauces, along with antibiotic and hormone free meats, to create unique and delicious barbeque products.

6.      Between 2007 and 2014, ROWDYDOW grew slowly over these first seven years with sales of only one product, namely a smoked pulled pork in sweet vinegar barbeque sauce which was Ms. Keaveny's father's recipe. Annual sales' revenue in these initial years started at $14,000 in 2007 and grew to $185,000 by 2013. During these years ROWDYDOW received few, if any, product quality complaints.

7.      Soon after its formation in 2007, ROWDYDOW was chosen to supply barbeque products at Soldier Field for Bears' home games. Sales grew slowly but steadily from that point on with ROWDYDOW adding customers such as Sysco Chicago, US Foods Chicago, Greco, Gold Medal and Hansen, among other food service distributors.

8.      In 2014 ROWDYDOW received its first major piece of business when it was awarded preferred vendor status as Sodexo Operations, LLC's main barbeque meat category supplier. ROWDYDOW was also selected to supply its products to the U.S. Military at Fort Lee, Dam Neck Naval Base and Oceana Naval Air Station. As a result of this new business, ROWDYDOW's 2014 annual sales grew to $1.2 million.

9.      By 2014, with its sharp sales and customer growth, ROWDYDOW's needs outgrew the capacities of its two copacking companies as each of its copackers had only one smoker for use in preparing barbeque products.

### ROWDYDOW Begins Doing Business With Fourth Street

10.      In order to help support the newly obtained Sodexo and military business, Ms. Keaveny was introduced in about April 2014 to Fourth Street as a possible supplier of barbeque protein product for ROWDYDOW. Unlike the copackers ROWDYDOW was using at the time,

Fourth Street had three smokers and therefore was better equipped to handle ROWDYDOW's growing volume of business. Soon after the parties' initial introduction, ROWDYDOW and Fourth Street began doing business with one another.

11.     From the outset, Fourth Street supplied product primarily to ROWDYDOW's customers in Illinois such as Sysco Chicago, US Foods Chicago and others.

12.     From the beginning of its relationship with Fourth Street, ROWDYDOW experienced issues with inconsistent packaging as well as undercooked beef brisket. These issues were brought to ROWDYDOW's attention by its existing and prospective customers, most of whom were in Illinois. ROWDYDOW, in turn, brought these complaints to Fourth Street. Of particular concern were the issues with undercooked beef brisket since, according to USDA guidelines, such product is required to be fully cooked and ready to eat, meaning that no additional heating is required before consumption.

**The Parties' Copack Agreement**

13.     On or about August 31, 2015, ROWDYDOW and Fourth Street entered into a Copack Agreement whereby Fourth Street agreed to produce for ROWDYDOW for distribution certain fully cooked, ready to eat pork and beef brisket barbeque products as described in Exhibit 1 to the Copack Agreement. A true and correct copy of the parties' Copack Agreement is attached hereto as Exhibit 1.

14.     Pursuant to Section 6.1 of the Copack Agreement, the term thereof was to continue in effect for two years from the date of the Agreement and was to automatically renew for additional consecutive one year terms unless terminated by either party upon 90 days prior written notice to the other.

4

15.     Pursuant to Section 2.1 of the Copack Agreement, Fourth Street assumed the full responsibility for the procurement of, and payment for, all raw materials, ingredients and packaging materials and equipment necessary to produce and package product for ROWDYDOW.

16.     Pursuant to Section 1.5 of the Copack Agreement, ROWDYDOW had the right, in addition to all other rights and remedies available to it under applicable law, at any time, either before or after shipment of Product, to reject any product that was not produced, packaged, stored or handled in compliance with the parties' Specifications, or which was otherwise not in a first class merchantable condition due to Fourth Street's breach of its obligations under the Copack Agreement. In such case, Fourth Street was obligated to pay ROWDYDOW for the cost of such Nonconforming Product and also for any freight, handling or other costs or expenses incurred by ROWDYDOW in connection with such Nonconforming Product.

17.     In addition to the above, Part 9 of the Copack Agreement provides:

PART 9          PURE FOOD GUARANTEE

9.1     Contractor guarantees that all Product produced and packaged for Company hereunder shall be, as of the date of shipment of such Product, not adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, as amended (the "Act") and will not be an article which may not, under the provisions of section 404, 405 or 512 of the Act, be introduced into interstate commerce. Contractor further guarantees it will adhere to all microbiological standards incorporated into the Manual, as well as to Good Manufacturing Practices.

18.     Sections 12.1 and 12.2 of Part 12 of the Copack Agreement provide:

PART 12         WARRANTY AND INDEMNITY

12.1     In addition to all other representations and warranties provided by law or set forth in this Agreement, Contractor warrants and represents to Company that all Product produced, packaged, stored or shipped for Company under this Agreement shall comply with all applicable federal, state and local laws and regulations and shall comply with the terms and conditions of this Agreement, including the

400755.00001.23008462.1

specifications as listed in Section 1.1 and guaranteed in Part 9, and shall be wholesome, merchantable, and fit for human consumption. Contractor also warrants and represents to Company the Product packaging supplied by Contractor shall be adequate for normal shipping and storage of Product.

12.2   Product which does not comply with the warranty set forth in Section 12.1 may be rejected by Company pursuant to the terms of Section 1.5 above. Contractor shall indemnify, defend and hold Company harmless from and against any and all liability, loss or damage, cost or expense (including court costs and reasonable attorney's fees) arising out of or resulting from a breach of such warranty, or a breach of any of Contractor's other obligations under this Agreement.

19.     Pursuant to Section 18.5, the Copack Agreement is to be governed by the laws of the State of Illinois.

**The Walmart Supplier Agreement**

20.     In about mid-May 2015 while attending the National Restaurant Association convention, Ms. Keaveny met an independent culinary consultant who introduced her to food representatives from Wal-Mart Stores, Inc. ("Walmart").

21.     Following this initial introduction, Ms. Keaveny was invited to visit Walmart's headquarters in Arkansas for further discussions regarding ROWDYDOW becoming a supplier of barbeque food products for sale at Walmart stores.

22.     In around late 2016, ROWDYDOW and Walmart entered into a written WalMart Grocery Supplier Agreement (the "Walmart Agreement") pursuant to which ROWDYDOW agreed to supply Walmart with products to support two separate projects. The first project involved the supply of sliced beef brisket to be sold under Walmart's Marketside label. This product was not to be made by Fourth Street. The second project involved the supply of ROWDYDOW's Smoked Pulled Pork in Sweet Vinegar BBQ Sauce (the "Pork Product") which was to be the main ingredient in Walmart's "Marketside Tavern Smokehouse Sub" sold at

Walmart stores nationwide. This product was to be made by Fourth Street. Both products were to be produced and sold fully cooked and ready to eat per USDA guidelines.

23.    Around April 2017, and pursuant to the Walmart Agreement, Fourth Street caused the first shipment of ROWDYDOW Pork Product to be shipped to West Liberty Foods, which was the company hired by Walmart to assemble the Tavern Smokehouse Sub.

24.    On or about May 24, 2017, West Liberty Foods phoned ROWDYDOW and stated it was not accepting roughly 2000 cases, which equated to roughly 24,000 packages, or nearly 18,000 pounds, of ROWDYDOW Pork Product because the packages were not sealed properly. Specifically, the product packaging done at Fourth Street's facility was found to have holes and/or visible wrinkles which meant that it had not been vacuum sealed properly, thereby allowing air and potential contaminates into the food product. As a result, West Liberty Foods rejected the product and returned it to Fourth Street. Walmart contacted ROWDYDOW and stated that this was not acceptable and could not happen again.

25.    In and before about June 15, 2017, a separate batch of ROWDYDOW's Pork Product produced by Fourth Street at its facility tested positive for listeria after shipment to West Liberty Foods. This product was also rejected by West Liberty Foods. In all, a total of approximately 5,200 cases, which equated to roughly 62,400 packages or nearly 47,000 pounds, of product were returned due to the listeria contamination.

26.    In or around August 2017, Walmart told ROWDYDOW that it was willing to give ROWDYDOW a third chance. Based on discussions between ROWDYDOW, Fourth Street, West Liberty Foods and Walmart, it was agreed that Fourth Street would employ a high pressure pasteurization ("HPP") process which is a cold pasteurization technique by which products already sealed in their package are introduced into a vessel and subjected to a high level of

isostatic pressure which, in turn, inactivates the bacteria, virus, yeasts, molds and parasites in the food thereby extending the product's shelf life and guaranteeing food safety. Between June and August 2017, ROWDYDOW expended time, effort and money in understanding how to implement the HPP process with Fourth Street. This included producing samples of ROWDYDOW product to be sent to an HPP facility for testing, as well as investigating logistics and costing issues. At or near the end of August, 2017 Walmart stated that it was ready to send ROWDYDOW a purchase order for additional product to be supplied by about October 1, 2017.

27.     Despite Walmart's willingness to give ROWDYDOW a third chance to continue supporting the Tavern Smokehouse Sub sandwich program, and despite the time and effort ROWDYDOW had spent moving forward with the HPP process, Fourth Street, without notice, abruptly informed ROWDYDOW that it would not produce product for the Walmart project. On September 21, 2017 Fourth Street notified ROWDYDOW that it was terminating the Copack Agreement effective in 30 days, not the 90 days required under the Agreement.

28.     Due to Fourth Street's wrongful termination of the contract, ROWDYDOW was unable to meet Walmart's request for supply of Pork Product by October 1, 2017 and, as a consequence, ROWDYDOW lost Walmart as a customer.

**The Sodexo Contract**

29.     On or about June 1, 2014, ROWDYDOW entered into a supply agreement with Sodexo Operations, LLC ("Sodexo") to supply barbeque product to Sodexo, including smoked whole beef brisket, sauced pulled pork and unsauced pulled pork.

30.     Sodexo is a worldwide provider of integrated food services to, among others, corporate, government, health care, school, sports and entertainment customers. As such, the

400755.00001.23008462.1

Sodexo business provided the potential for tremendous growth for ROWDYDOW in terms of both revenue and volume.

31.     In or about April 2017, Ms. Keaveny met with Sodexo to discuss Sodexo's plans for its barbeque category.  During this meeting, Ms. Keaveny and Sodexo discussed broadening the parties' relationship by adding additional products such as sliced beef brisket, burnt ends and chopped beef brisket.

32.     In or about the summer of 2017, Sodexo requested that ROWDYDOW provide samples of the additional products for Sodexo's review.  That summer, Sodexo performed a preliminary review of ROWDYDOW'S meat products.

33.     On or about August 8, 2017, Sodexo informed ROWDYDOW that managers and a culinary team had reviewed samples of ROWDYDOW'S barbeque product and found that the "burnt ends were not very good" and that the sliced brisket was "not sliced properly at all.  Just so-so.  Did not eat well at all."

34.     The product supplied to Sodexo that was the subject of the review described in paragraph 33 was manufactured and supplied by Fourth Street.

35.     In or about September 2017, Fourth Street supplied additional product manufactured by Fourth Street to Sodexo, including sauced and unsauced pulled pork and whole beef brisket which was to be sampled as part of Sodexo's "category evaluation" of ROWDYDOW'S product.

36.     On or about October 26, 2017, Sodexo performed a "cutting" whereby it again sampled the product manufactured and supplied by Fourth Street.  On or about November 3, 2017, Sodexo informed ROWDYDOW that it was once again dissatisfied with the quality of ROWDYDOW's product and was switching to another supplier.

400755.00001.23008462.1

37.     On information and belief, Sodexo's decision to cease doing business with ROWDYDOW was due primarily to the poor quality of the product manufactured and supplied by Fourth Street.

## COUNT I
### (Breach of Contract)

38.     ROWDYDOW realleges Paragraph 1 through 37 as if fully set forth herein.

39.     Effective August 31, 2015 ROWDYDOW and Fourth Street entered into the Copack Agreement whereby Fourth Street agreed to produce at its facility fully cooked, ready to heat and eat, barbecue products according to USDA guidelines for ROWDYDOW for sale and distribution.

40.     Pursuant to the express terms of the Copack Agreement, Fourth Street agreed that it shall mix, process, sample, test, pack, code, store, and handle Product and perform such other services as may be reasonably required by ROWDYDOW to produce and package Product in accordance with Good Manufacturing Practices prevailing in the industry, among other things.

41.     Pursuant to Section 1.5 of the Copack Agreement, ROWDYDOW had the right, in addition to all other rights and remedies available to it under applicable law, to at any time, either before or after shipment of Product, reject Product which had not been produced, packaged, stored or handled in compliance with the Specifications, or which was otherwise not in compliance with the terms and conditions of the Copack Agreement.

42.     The term of the Copack Agreement ran for two years from August 31, 2015 and automatically renewed for an additional one year term effective August 31, 2017.

43.     Fourth Street breached the Copack Agreement in one or more of the following ways:    by (a) supplying defectively manufactured and prepared product; (b) supplying

defectively packaged product; (c) supplying contaminated product not fit for human consumption; and (d) terminating the Copack Agreement without proper cause or notice.

44.     ROWDYDOW performed all of its obligations under the Copack Agreement.

45.     As a direct and proximate consequence of Fourth Street's breaches of the Copack Agreement, ROWDYDOW has suffered damages in the form of money paid for defective product, lost profits, lost business opportunities, damage to reputation, and other actual and consequential damages, in an amount not yet determined, but which are not less than $3.0 million.

46.     Pursuant to Sections 12.2 and 18.6 of the Copack Agreement, in addition to other amounts due it, ROWDYDOW is entitled to recover its court costs and reasonable attorney's fees.

WHEREFORE, ROWDYDOW prays that judgment be entered in its favor and against Fourth Street as follows:

(a)     for compensatory damages in an amount to be proven at trial, but which are not less than $3.0 million;

(b)     for prejudgment and post judgment interest;

(c)     for its attorney's fees and costs; and

(d)     for such further relief as the Court may deem appropriate.

**COUNT II**
**(Breach of Express Warranty)**

47.     ROWDYDOW realleges paragraphs 1 through 46 as if fully set forth herein.

48.     Pursuant to Part 12 of the Copack Agreement, Fourth Street expressly warranted and represented to ROWDYDOW that all Product produced, packaged, stored or shipped for ROWDYDOW would comply with all applicable Federal, state and local laws and regulations as

400755.00001.23008462.1

well as the terms and conditions of the Copack Agreement, and would be wholesome, merchantable, fit for human consumption and adequate for normal shipping and storage.

49.      Fourth Street breached its express warranty to ROWDYDOW by producing, packaging, storing and or shipping product that was contaminated and defectively packaged as further detailed herein.

50.      As a direct and proximate result of the defective Product produced, packaged, stored and shipped by Fourth Street, ROWDYDOW has suffered damages in the form of money paid for defective products, lost profits, lost business opportunities, damage to reputation and other actual and consequential damages in an amount not yet determined, but which are not less than $3.0 million.

51.      Pursuant to Sections 12.2 and 18.6 of the Copack Agreement, in addition to other amounts due it, ROWDYDOW is entitled to recover its court cost and reasonable attorney's fees.

WHEREFORE, ROWDYDOW prays that judgment be entered in its favor and against Fourth Street as follows:

(a)      for compensatory damages in an amount to be proven at trial, but which are not less than $3.0 million;

(b)      for prejudgment and post-judgment interest;

(c)      for its attorney's fees and costs; and

(d)      for such further relief as the Court may deem appropriate.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

52.      ROWDYDOW realleges paragraphs 1 through 51 as if fully set forth herein.

53.     By producing, packaging, storing or shipping defective Product to ROWDYDOW, Fourth Street breached the implied warranty of merchantability to ROWDYDOW.

54.     By producing, packaging, storing or shipping goods that were not fit for the ordinary purposes for which such goods are used, i.e, human consumption, Fourth Street breached its obligations to ROWDYDOW under Section 2-314 of the Illinois Uniform Commercial Code (810 ILCS 5/2-314).

55.     As a direct and proximate result of the defective Product produced, packaged, stored and/or shipped by Fourth Street, ROWDYDOW has suffered damages in the form of money paid for defective product, lost profits, lost business opportunities, damage to reputation and other actual and consequential damages in an amount yet to be determined, but which are not less than $3.0 million.

56.     Pursuant to Sections 12.2 and 18.6 of the Copack Agreement, in addition to other amounts due it, ROWDYDOW is entitled to recover its court costs and reasonable attorney's fees.

WHEREFORE, ROWDYDOW prays that judgment be entered in its favor and against Fourth Street as follows:

(a)     for compensatory damages in an amount to be proven at trial, but which are not less than $3.0 million;

(b)     for prejudgment and post-judgment interest;

(c)     for its attorney's fees and costs; and

(d)     for such further relief as the Court may deem appropriate.

400755.00001.23008462.1

## COUNT IV
### (Breach of Implied Warranty of Fitness For A Particular Purpose)

57.     ROWDYDOW realleges paragraphs 1 through 56 as if fully set forth herein.

58.     By producing, packaging, storing or shipping Product that did not meet the particular purpose for which the goods were required, Fourth Street breached the implied warranty of fitness for a particular purpose in violation of ROWDYDOW's rights under Section 2-315 of the Illinois Uniform Commercial Code, 810 ILCS 5/2-315.

59.     ROWDYDOW reasonably and justifiably relied on Fourth Street's warranties and representations that the Product it produced, packaged, stored and shipped would be defect free, such that it was not adulterated or contaminated and was packaged in a manner that was adequate for normal shipping and storage.

60.     As a direct and proximate result of the defective Product produced, packaged, stored and/or shipped by Fourth Street, ROWDYDOW has suffered damages in the form of money paid for defective product, lost profits, lost business opportunities, damage to reputation and other actual and consequential damages in an amount not yet determined, but which are not less than $3.0 million.

61.     Pursuant to Sections 12.2 and 18.6 of the Copack Agreement, in addition to other amounts due it, ROWDYDOW is entitled to recover its court costs and reasonable attorney's fees.

WHEREFORE, ROWDYDOW prays that judgment be entered in its favor and against Fourth Street as follows:

(a)     for compensatory damages in an amount to be proven at trial, but which are not less than $3.0 million;

(b)     for prejudgment and post-judgment interest;

(c)     for its attorney's fees and costs; and

(d)     for such further relief as the Court may deem appropriate.

## <u>JURY DEMAND</u>

ROWDYDOW demands a trial by jury on all issues so triable.

Respectfully submitted,

**ROWDYDOW BBQ WORLDWIDE, LLC**

By:     /s/Robert S. Grabemann
          One of Its Attorneys

Robert S. Grabemann
Timothy M. Schaum
Daspin & Aument LLP
300 S. Wacker Drive
Suite 2200
Chicago, Illinois 60606
312-258-1600
rgrabemann@daspinaument.com
tshaum@daspinaument.com

400755.00001.23008462.1